UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Michael A. Schlegel, | Case No. 19-cv-338 (SRN/ECW) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| M. Rios, | |
| Respondent. | |

This matter is before the Court on Petitioner Michael A. Schlegel's ("Schlegel") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (Dkt. No. 1) ("Petition"), Motion to Amend Petition (Dkt. No. 4) ("Motion to Amend"), and Motion for Interim Conditional Release (Dkt. No. 5). The Petition requests "Immediate Release" pursuant to the Second Chance Act of 2007 as amended by the First Step Act of 2018. (Dkt. No. 1 at 6.) The Motion to Amend seeks to add a claim that Schlegel's Good Time Credit be adjusted pursuant to the First Step Act of 2018. (Dkt. No. 4.) The Motion for Interim Conditional Release adds information related to the Petition and Motion and requests a conditional release. (Dkt. No. 5 at 1, 6.) The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons stated below, the Court recommends that the Petition be dismissed without prejudice, the Motion to Amend be denied as moot, and the Motion for Interim Conditional Release be denied without prejudice.

## I.     BACKGROUND

Schlegel is currently incarcerated at the Federal Prison Camp in Duluth, Minnesota ("FPC-Duluth"). (Dkt. No. 1 at 1.) He was convicted of (1) Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371; (2) Attempt to Evade or Defeat Tax, in violation of 26 U.S.C. § 7201; and (3) Willful Failure to File Tax Return, in violation of 26 U.S.C. § 7203. (Dkt. No. 13-1, Ex. A at 2.) Schlegel was sentenced on May 19, 2015 in the District of Minnesota to a 60-month term of imprisonment, followed by a three-year term of supervised release. (*Id.*) He has a projected release date of September 25, 2019, via good conduct time release. (*Id.*)

On January 14, 2019, Schlegel brought a Motion for Immediate Release pursuant to the Second Chance Act of 2007 in his criminal case. *United States of America v. Schlegel*, 13-cr-74 (PJS/FLN), Dkt. No. 236 (D. Minn. Jan. 14, 2019). United States District Judge Patrick J. Schiltz denied Schlegel's motion without prejudice, stating that "to the extent Schlegel may have a claim for relief under [the Second Chance Act of 2007], he cannot pursue it by motion in his criminal case, but must instead file a separate civil action under 28 U.S.C. § 2241." *Id.*, Dkt. No. 239 (D. Minn. Jan. 31, 2019) (citing *Matheny v. Morrison*, 307 F.3d 709, 711 (8th Cir. 2002)). Schlegel has since filed numerous related motions in his criminal case, *id.*, Dkt. Nos. 240, 242, 244, 246, 248, 250, 252, which have all been denied without prejudice, *id.*, Dkt. Nos. 241, 243, 245, 247, 249, 251, 253.

Schlegel filed his § 2241 Petition on February 11, 2019, seeking immediate release pursuant to the Second Chance Act of 2007, alleging that "inmates over 60 years of age

that have completed 2/3rds of their sentence are eligible for Immediate Release." (Dkt. No. 1 at 6.) The "immediate release" that Schlegel seeks is to home confinement (the "home confinement claim") pursuant to amendments to the Second Chance Act of 2007 by the First Step Act of 2018.[1] (*See* Dkt. No. 16 at ECF-3.) On March 1, 2019, Schlegel filed his Motion to Amend to add to his claim that his Good Time Credit should be recalculated based on the First Step Act of 2018 (the "GTC claim"). (Dkt. No. 4.) Because Schlegel filed his Motion to Amend within 21 days of serving his Petition, he could amend "as a matter of course" and the Court will therefore consider it as part of his Petition. *See* Fed. R. Civ. P. 15(a)(1). Schlegel also filed the Motion for Interim Conditional Release on March 1, 2019. (Dkt. No. 5.)

The Government filed its response brief on March 22, 2019 addressing both the Petition and the Motions. (Dkt. No. 12.) In its response brief, the Government argued that Schlegel's Petition should be dismissed for failure to exhaust administrative remedies, as not ripe, and because Schlegel lacks a statutory or constitutional entitlement to relief and that the motions to amend and for interim conditional release should be denied as meritless. (*Id.* at 10.)

---

[1] The Second Chance Act refers to "home detention." 34 U.S.C. § 60541. As both parties use "home confinement" and "home detention" interchangeably, the Court does the same.

Schlegel filed his reply on March 29, 2019. (Dkt. No. 16.) Schlegel asserts that his Petition is ripe for review and asks the Court to reduce his sentence by an additional 35 days off his imprisonment.[2] (*Id.* at ECF-3.)

## II.     ANALYSIS

### A.     Exhaustion of Administrative Remedies

Generally, federal prisoners must exhaust all available administrative remedies prior to seeking federal habeas corpus relief under 28 U.S.C. § 2241. *See United States v. Wilson*, 503 U.S. 329, 335 (1992); *see also Mathena v. United States*, 577 F.3d 943, 946 (8th Cir. 2009). However, because the concept of exhaustion for § 2241 petitions is judicially created and not mandated by statute, the Court has discretion to determine if the exhaustion requirement must be met. *See Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007) (holding that failure to exhaust does not affect a court's ability to a decide case where "the exhaustion prerequisite for filing a 28 U.S.C. § 2241 petition is judicially created, not jurisdictional"). Here, Schlegel has not exhausted his administrative remedies for either his home confinement claim or his GTC claim (Dkt. No. 1 at 2; Dkt. No. 13 ¶ 13), but the Court concludes that the exhaustion requirement should be excused for Schlegel's GTC claim, but not the home confinement claim.

In "balancing the individual's interests in retaining prompt access to a federal forum against countervailing institutional interests favoring exhaustion," courts have

---

[2]   In his reply, which was dated March 26, 2019, Schlegel asserted he was scheduled for release on March 27, 2019. (Dkt. No. 16 at ECF-3.) The record does not reflect whether Schlegel has in fact been released to home confinement.

4

concluded that the exhaustion requirement may be excused due to time constraints or where proceeding through the administrative remedy process would undoubtedly be an exercise in futility that could serve no useful purpose. *McCarthy v. Madigan*, 503 U.S. 140, 146, 148 (1992), *superseded by statute on other grounds as stated in Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *see also Elwood v. Jeter*, 386 F.3d 842, 844 n.1 (8th Cir. 2004) (exhaustion requirement waived based on governmental concession that "continued use of the [administrative] grievance procedure to contest the validity of the [Bureau of Prisons]'s new policy would be futile").

Regarding Schlegel's home confinement claim, the balancing of interests does not favor excusing the exhaustion requirement because the home confinement pilot program is highly individualized, and, as explained in Section II.B, the Bureau of Prisons ("BOP") is in the best position to determine whether Schlegel is eligible and an appropriate candidate for that program.

In the case of Schlegel's GTC claim, the balancing of interests favors having the issues raised by Schlegel promptly decided over the institutional interests protected by the exhaustion requirement, especially in light of the fact that the BOP has established its position as it relates to the effective date of the First Step Act. Therefore, the Court waives the exhaustion requirement and reaches the merits of Schlegel's claim for recalculation of his Good Time Credit.

**B.    Request for Immediate Home Confinement**

As noted above, the Court recommends the Petition be denied on the home confinement claim for failure to exhaust remedies, but the Court also recommends it be

5

dismissed because the Court lacks authority to order the BOP to place Schlegel in home confinement. Schlegel seeks home confinement pursuant to the Second Chance Act of 2007 as amended by First Step Act of 2018. (Dkt. No. 16 at ECF-3.) The elderly inmate home confinement pilot program, codified at 34 U.S.C. § 60541(g) states:

> **(1) Program authorized**
> **(A) In general**
> The Attorney General shall conduct a pilot program to determine the effectiveness of removing eligible elderly offenders and eligible terminally ill offenders from Bureau of Prisons facilities and placing such offenders on home detention until the expiration of the prison term to which the offender was sentenced.
> **(B) Placement in home detention**
> In carrying out a pilot program as described in subparagraph (A), the Attorney General may release some or all eligible elderly offenders and eligible terminally ill offenders from Bureau of Prisons facilities to home detention, upon written request from either the Bureau of Prisons or an eligible elderly offender or eligible terminally ill offender.

An "eligible elderly offender" means an offender in the custody of the Bureau of Prisons--

> **(i)** who is not less than 60 years of age;
>
> **(ii)** who is serving a term of imprisonment that is not life imprisonment based on conviction for an offense or offenses that do not include any crime of violence (as defined in section 16 of Title 18), sex offense (as defined in section 20911(5) of this title), offense described in section 2332b(g)(5)(B) of Title 18, or offense under chapter 37 of Title 18, and has served 2/3 of the term of imprisonment to which the offender was sentenced;
>
> **(iii)** who has not been convicted in the past of any Federal or State crime of violence, sex offense, or other offense described in clause (ii);
>
> **(iv)** who has not been determined by the Bureau of Prisons, on the basis of information the Bureau uses to make custody classifications, and in the sole discretion of the Bureau, to have a history of violence, or of engaging in conduct constituting a sex offense or other offense described in clause (ii);

>**(v)** who has not escaped, or attempted to escape, from a Bureau of Prisons institution;
>
>**(vi)** with respect to whom the Bureau of Prisons has determined that release to home detention under this section will result in a substantial net reduction of costs to the Federal Government; and
>
>**(vii)** who has been determined by the Bureau of Prisons to be at no substantial risk of engaging in criminal conduct or of endangering any person or the public if released to home detention.

34 U.S.C. § 60541(g)(5)(A).

Before turning to the merits of Schlegel's request for immediate release to home confinement, the Court notes that Schlegel's Petition refers to placement in the home confinement program as "immediate release." (Dkt. No. 1 at 5, 6, 7.) For purposes of clarity, "release . . . to home detention" as set forth in the statute is not a release from a sentence or imprisonment; rather, home confinement still constitutes imprisonment. *See* 18 U.S.C. § 3624(c); *Holter v. Marques*, 18-cv-984 (PJS/SER), 2018 WL 4346224, at *2 (D. Minn. Aug. 15, 2018) ("The 'place of the prisoner's imprisonment' includes . . . home confinement."). Accordingly, even if the BOP does place Schlegel in home confinement, he will not be "released" from imprisonment but rather will continue serving his sentence in home confinement.

The Government concedes that Schlegel meets several of the requirements for the program and during a preliminary review, the FPC-Duluth found Schlegel "potentially eligible" for home confinement.[3] (Dkt. No. 12 at 15 n.6.) However, the Attorney

---

[3] Schlegel contends that because the Second Chance Act was amended by striking "the Bureau of Prisons facility" and inserting "the Bureau of Prisons facilities," it

7

General (and by delegation, the BOP) has discretion—and exclusive authority—to designate the place of an inmate's confinement. *Austin v. Woods*, 2:19-cv-7 (WHA), 2019 WL 2417654, at *4 (M.D. Ala. May 17, 2019), *R&R adopted*, 2019 WL 2422114 (M.D. Ala. June 7, 2019) (citing *Parsons v. Howard*, 2019 WL 469913, at *2 (M.D. Pa., February 6, 2019)). A prisoner does not have a liberty interest in serving their sentence in any particular place of imprisonment. *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976). "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Id.* at 224. Moreover, the Second Chance Act itself expressly reserves discretion in placing inmates to the BOP. 18 U.S.C. § 3624(c)(4) ("Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621."). Accordingly, the Court lacks authority to order home confinement for Schlegel. *Austin*, 2019 WL 2417654 at *4 (quoting *Deffenbaugh v. Sullivan*, 2019 WL 1779573, at *1 (E.D.N.C. Apr. 23, 2019) (collecting cases)).

## C.     Request for Recalculation of Good Time Credit

Plaintiff's Motion to Amend (Dkt. No. 4) requests the "adjudicati[o]n of Good Time Credits" based on 2018 changes to the First Step Act. As noted above, Schlegel's

---

necessarily applies to FPC-Duluth. (Dkt. No. 16 at 2.) However, according to the Government, "[a]lthough the [BOP] is working on policy changes pursuant to the First Step Act, guidance has not yet been issued implementing the Elderly Home Confinement Pilot Program, including identifying *which facilities* will participate in the pilot program." (Dkt. No. 13 ¶ 14 (emphasis added).)

Motion to Amend was filed within 21 days after service, permitting him to amend as a matter of course. *See* Fed. R. Civ. P. 15(a)(1). The Court will thus address Schlegel's request.

### 1. Background Related to the First Step Act

Prior to the First Step Act, the Sentencing Reform Act of 1984 modified the rate at which federal prisoners could earn Good Time Credit, setting forth in 18 U.S.C. § 3624(b) that:

> [A] prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of **up to 54 days at the end of each year of the prisoner's term of imprisonmen**t, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.

18 U.S.C. § 3624(b)(1) (emphasis added).

In implementing § 3624(b), the BOP counted the 54 days set forth in the statute against "time actually served" as opposed to the sentence "as imposed," resulting in federal prisoners only receiving 47 days of credit for each year of the term of imprisonment. *See Barber v. Thomas*, 560 U.S. 474, 477-79 482-83 (2010). The BOP's interpretation of the Good Time Credit provision in § 3624 was upheld as a reasonable interpretation of the statute by the Supreme Court. *Id.* at 480. Pursuant to *Barber,* eligible federal prisoners received 47 days of Good Time Credit for each year of the term of imprisonment.

9

The First Step Act, Pub. L. No. 115-015, 132 Stat. 015 (2018),[4] enacted on December 21, 2018, amended § 3624(b) to provide in relevant part:

> [A] prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, **of up to 54 days for each year of the prisoner's sentence imposed by the court**, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.

18 U.S.C. § 3624(b)(1), *as amended by* Pub. L. 115-391, § 102(b)(1)(A)(i), 132 Stat. 5194, 5210 (emphasis added).

The First Step Act addressed the Supreme Court's decision in *Barber v. Thomas* by removing the language providing for 54 days of Good Time Credit at the end of each year of a prisoner's "term of imprisonment" and substituting language providing 54 days of Good Time Credit for each year of the prisoner's "sentence imposed by the court." 132 Stat. at 5210. As such, the amendment of § 3624(b) by the First Step Act will result in the recalculation of the projected release dates of most current inmates (other than those serving sentences for offenses committed before November 1, 1987, and sentences to life imprisonment). *Id.* at 5213. Congress also amended the method for prorating Good Time Credit for a partial year of a sentence imposed by a court. *Id*. at 5210.

### 2.    The Recalculation of Plaintiff's Good Time Credit is Premature

As stated previously, Schlegel seeks the immediate recalculation of his entitlement to Good Time Credit pursuant to the First Step Act so he can receive 54 days instead of

---

[4]   The First Step Act can be found at: https://www.congress.gov/bill/115th-congress/senate-bill/756/text#toc-id368aca90db704a939b75a29fa150c3f7.

the 47 days per year, which would make him eligible for an earlier release. However, Schlegel cannot obtain such relief because the new method of calculating Good Time Credit under the First Step Act is not yet in effect.

"It is well established that, absent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment." *Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991) (citations omitted); *see also United States v. Ways*, 832 F.3d 887, 893 (8th Cir. 2016) (citing *Johnson v. United States*, 529 U.S. 694, 702 (2000)) ("When a statute does not specify its effective date, and there is no clear congressional directive to the contrary, the statute takes effect on the date it is enacted."). When interpreting a statute, a court must "begin by analyzing the statutory language, 'assuming that the ordinary meaning of that language accurately expresses the legislative purpose." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010) (cleaned up) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009)). If the statute's language is plain, the court's sole function is to enforce the statute according to its terms, unless it leads to an absurd result. *See Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004) ("It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'") (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)).

While the First Step Act was enacted on December 21, 2018, Congress set forth its clear intention through the plain language of Section 102(b) that the amendments relating to the recalculation of Good Time Credit do not go into effect until the Attorney General

11

develops and releases a new risk and needs assessment. The amendment to Section 3624(b) is found within Section 102(b)(1)(A) of the First Step Act. *See* 132 Stat. at 5209-10. Section 102(b) provides that the effective date for "this subsection"[5] as follows:

> EFFECTIVE DATE.—The amendments made by this subsection shall take effect beginning on the date that the Attorney General completes and releases the risk and needs assessment system under subchapter D of chapter 229 of title 18, United States Code, **as added by section 101(a) of this Act**.

132 Stat. at 5213 (emphasis added).

Pursuant to Section 101 of the First Step Act, the Attorney General must develop and release the new risk and needs assessment within "210 days from its enactment," which will occur sometime on July 19, 2019. *See* 132 Stat. at 5196. Based on the above unambiguous language of Section 102(b) of the First Step Act, the Court finds that amendments relating to the recalculation of Good Time Credit are not yet in effect. As such, this Court has no authority at this point to order the BOP to recalculate the amount of Good Time Credit to which Schlegel may be entitled to under the First Step Act. While the Court acknowledges that such an interpretation may adversely impact Plaintiff given that the Attorney General may take the full 210 days allotted to him in the Act to

---

[5] A general rule of legislative drafting is that the lower-case letter under a section is referred to as a "subsection" and the numeral below the subsection is referred to as a "paragraph." *See* U.S. House of Representatives, Office of the Legislative Counsel, "Guide to Legislative Drafting," at https://legcounsel.house.gov/HOLC/Drafting_ Legislation/ Drafting_Guide.html. "The terminology for referring to units within a section has become highly standardized and should be carefully followed to avoid confusion." *Id.* Thus, the effective date applies to the entirety of Section 102(b) and not just certain paragraphs of Section 102(b). *See Musgrove v. Ortiz*, No. CV 19-5222 (NLH), 2019 WL 2240563, at *3 (D.N.J. May 24, 2019).

issue a risk and need assessment, the Court may not interpret the First Step Act in a manner contrary to its unambiguous plain language in order to avoid a possible burden to Schlegel. *See Lamie*, 540 U.S. at 538 ("Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding."); *Union Bank v. Wolas*, 502 U.S. 151, 158 (1991) (citation omitted) ("The fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning."). Further, Schlegel's current projected release date from imprisonment is September 25, 2019. Thus, it appears he may have sufficient time between July 2019 and the release date he asserts he is entitled to (approximately 35 days before September 25, 2019) to benefit from the changes to Good Time Credit enacted by the First Step Act.[6]

The Eighth Circuit has not yet ruled on the effective date of Section 102(b) of the First Step Act. However, the majority of the district courts that have ruled on this issue have concluded that the amendment to § 3624(b)(1) related to Good Time Credit does not take effect until the Attorney General has completed his development and release of the new risk and needs assessment, which must occur by sometime in mid-July (on or about July 19, 2019). *See, e.g.*, *Thompson v Warden*, No. 2:19-cv-89 (JRS/DLP), 2019 WL 2412580, at *3 (S.D. Ind. June 7, 2019); *Rhodes v. United States*, No. 0:19-CV-047-HRW, 2019 WL 2273848, at *2 (E.D. Ky. May 28, 2019); *Musgrove,* 2019 WL 2240563,

---

[6] Schlegel asserts he is entitled to an additional 35 days of Good Time Credit under the First Step Act. (Dkt. No. 16 at ECF-3.) The Court makes no determination in this Order as to how much additional Good Time Credit, if any, Schlegel is entitled.

13

at *2-3; *United States v. Murgia*, No. 3:10-CR-0076-01-HRH, 2019 WL 2236067, at *3 (D. Alaska May 22, 2019); *Dailey v. Bureau of Prisons*, No. CV 1:19-0662-RMG, 2019 WL 2089167, at *1 (D.S.C. May 13, 2019); *Pizarro v. White*, No. 1:19-cv-343, 2019 WL 1922437, at *1 (M.D. Pa. Apr. 30, 2019); *Christopher v. Wilson*, Civil Action No. 4:19-cv-214-O, 2019 WL 1745968, at *1-2 (N.D. Tex. Apr. 18, 2019); *Matthews v. Williams*, Case No. 4:19CV518, 2019 WL 1639776, at *2 (N.D. Ohio Apr. 16, 2019); *Roy v. United States Bureau of Prisons*, NO: 2:19-CV-59-RMP, 2019 WL 1441622, at *1-2 (E.D. Wash. Apr. 1, 2019); *but see United States v. Mark John Walker*, Case No. 3:10-cr-00298-RRB-1 (D. Or. Feb. 7, 2019) (order requiring immediate recalculation under the First Step Act without any analysis of the language of the Act) (Dkt. No. 14-2).

Accordingly, Schlegel is not entitled to immediate relief, and his request for a recalculation of his Good Time Credit based upon the amendments is premature. The Court recommends denial of Schlegel's request.

**D.     Motion for Interim Conditional Release**

Schlegel's request for interim conditional release appears to be based on a decision from the United States District Court for the District of Oregon in *United States of America v. Mark John Walker*, Case No. 3:10-cr-00298-RRB-1, Dkt. No. 110 (D. Or. Feb. 7, 2019), in which Senior United States District Judge Ralph R. Beistline ordered the BOP to "release Defendant without delay if the recalculation [based on the First Step Act of 2018] confirms that the Defendant's term of imprisonment has expired." *Id.* at 2; *see also* Dkt No. 16-2.) Judge Beistline determined that he had subject matter jurisdiction, despite Walker's failure to exhaust administrative remedies, and because the Government

failed to address the merits—and given "the equities of the situation"—he granted "the relief requested for this case only, without a final determination of the merits of the legal issues raised by [Walker]." *Id.* at 1.  Here, however, the Government did not fail to address the merits of Schlegel's GTC claim.  Further, having considered the issues and concluded that the Court lacks the authority to order the BOP to recalculate Schlegel's Good Time Credit under the First Step Act, the Court recommends denial of Schlegel's motion for interim conditional release.

### III.   RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein**, IT IS RECOMMENDED THAT:**

1. Petitioner Schlegel's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE**.

2. Petitioner Schlegel's Motion to Amend (Dkt. No. 4) be **DENIED AS MOOT**.

3. Petitioner Schlegel's Motion for Interim Conditional Release (Dkt. No. 5) be **DENIED**.

DATED: June 17, 2019              *s/Elizabeth Cowan Wright*
                                  ELIZABETH COWAN WRIGHT
                                  United States Magistrate Judge

### NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).